KOZINSKI, Circuit Judge,
concurring:
I join and applaud the majority’s sound disposition.. I write separately in fulfillment of our venerable obligation “to the public [to issue] a civil reprehension of advocates, where there appeareth cunning counsel [or] gross neglect.” Francis Barcon, Essays, Civil and Moral in 3 Harvard Classics 7, 139 (Charles W. Eliot ed., 1909). As the principal opinion demonstrates, Brooks’s federal habeas counsel, Gregory H. Mitts, satisfied both of these categories by ignoring Brooks’s communications, ' missing deadlines and then concealing his dereliction. In doing so, he jeopardized his client’s chance to obtain federal habeas relief. Maj. at 534-35. Yet Mitts continues to practice law in California with no mark on his record that would apprise prospective clients of the grave risks of hiring him to represent them. See Attorney Search: Gregory Henrick Mitts — # 71981, State Bar of California, http://members.calbar.ca.gov/fal/Member/ Detail/71981 (last visited Mar. 7, 2016).
The facts are even worse than one would gather from reading the majority opinion. After Mitts was retained in March 2010, Brooks apparently sent a letter (not in the record) suggesting how'the case might be handled. 'In October, Mitts sent an imperious response admonishing Brooks not to “micromanage” the case from prison. The letter also mentioned offhand that the California Supreme Court had denied Brooks’s pending post-conviction relief petition, but didn’t say when. Nevertheless, *536 Mitts assured Brooks that he was “aware of the time constraints attendant to” filing his federal habeas petition.
That turned out to be untrue. Brooks’s federal habeas deadline expired just days after Mitts wrote to Brooks, but Mitts sat on his thumbs. Over the next year, Mitts systematically ignored a stream of letters that-Brooks sent inquiring about the' status of his case. In May 2011, Brooks wrote to Mitts pointing out his “lack of regular communication” and asking Mitts to call him at the prison. Brooks wrote again the following month, explaining that Mitts’s silence was “extremely frustrating.” Having heard nothing, Brooks wrote yet again in July. To-, facilitate .a response, Brooks enclosed questions to which Mitts could provide “yes/no” answers and brief explanations. Brooks . begged Mitts to “PLEASE ANSWER THESE QUESTIONS AND MAIL THEM ... WITHIN 2 WEEKS.” Brooks continued to send letters to Mitts approximately once f a month over the next four months. In August, he reminded Mitts of his responsibility to “be in contact and communicate with [your] client” and mentioned-that he had been waiting “almost a year”, for responses to his “11 previous letters.” In October, Brooks sent Mitts an “urgent” letter imploring him to communicate, even if it meant referring him to á paralegal.
In August 2011, ten months after the deadline expired, Mitts finally deigned to file a federal habeas petition, apparently without notifying Brooks. When the district court issued an order to show'cause as. to why the' petition shouldn’t be dismissed as untimely, Mitts didn’t file a response or notify Brooks of the order. Mitts later explained that he did not respond to the show-cause order because he couldn’t contest the court’s untimeliness finding. When the magistrate judge recommended that the petition be dismissed, Mitts didn’t object. The district court thus entered final judgment on a habeas petition that Brooks didn’t-even know had been filed on his behalf, Mitts has never explained why he missed the filing deadline by almost a year, or why he did not notify his client immediately of the default and subsequent court orders.
Lawyers make mistakes, including missing deadlines. It is nothing to be proud of but it does happen from time to time and doesn’t usually amount to misconduct. But lawyers have a responsibility to communicate, with their clients and keep them reasonably apprised of the status of their cases. They must also notify them promptly of significant developments, which, of course, include the sinking of the case. The client can then make an informed choice whether to continue with the lawyer who caused the default or hire another lawyer who can effectively argue the first lawyer’s ineptitude.
A lawyer who comports himself as Mitts did is not only a hazard to clients, but also a menace to the profession" and to the court's. Mitts’s actions consumed countless horn's of this court’s and the district court’s time in dealing with his obstinate incompetence. If Mitts was so lackadaisical in Brooks’s case, we can only imagine what problems he’s caused, or is likely to cause, other clients. Potential clients, who will put their lives in Mitts’s hands, as Brooks did, are entitled to know that this lawyer ignores client inquiries, misses jurisdictional deadlines and does not own up to his mistakes.
I am unaware of any disciplinary action currently underway to address what appears to have been misconduct by Mitts. The State Bar of California may not yet be aware of Mitts’s behavior. Perhaps now it will be.